ANNE MILLIGAN, OSB 111615
Deputy City Attorney
anne.milligan@portlandoregon.gov
Portland City Attorney's Office
1221 SW 4th Ave., Rm. 430
Portland, OR  97204
Telephone: (503) 823-4047
Facsimile: (503) 823-3089
*Of Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **KATHRYN KOCH,** | **3:21-cv-01191-IM** |
| **PLAINTIFF,** | |
| v. | **DEFENDANTS' MOTION TO DISMISS AND SPECIAL ANTI-SLAPP MOTION TO STRIKE PURSUANT TO ORS 31.150** |
| **CITY OF PORTLAND, and MARY HULL CABALLERO, ELIZABETH PAPE, and DEBORAH SCROGGIN, in their individual capacities,** | |
| **DEFENDANTS.** | |

Page i –    DEFENDANTS' MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE

Table of Contents

I.      MOTIONS ...........................................................................................................1

        A.      The Court should dismiss Plaintiff's First Claim for Relief, Marital
                Discrimination, because Plaintiff's factual allegations do not establish (1)
                discrimination based on marital status or (2) any form of adverse employment
                action taken by City. ..........................................................................................1

        B.      The Court should dismiss Plaintiff's Second Claim for Relief, Defamation,
                because Plaintiff's factual allegations do not establish the claim for relief as a
                matter of law; Defendant's actions are absolutely privileged................................1

        C.      The Court should dismiss Plaintiff's Third Claim for Relief, Abuse of Process,
                because Plaintiff's factual allegations do not establish the claim for relief as a
                matter of law; Plaintiff fails to allege either an actual arrest or seizure to support
                her common law claim for relief..........................................................................1

        D.      The Court should dismiss Plaintiff's Fourth Claim for Relief, "Violation of 42
                U.S.C. § 1983 (Due Process)," because Plaintiff has no property interest in her
                reputation as a matter of law, Plaintiff was not deprived of any property interest in
                her job, and because the individual Defendants' actions are covered by qualified
                immunity. ..........................................................................................................1

        E.      In the event that Plaintiff's Claims for Relief are not dismissed as described
                above, the Court should strike any and all remaining Claims for Relief pursuant to
                ORS 31.150, Oregon's Anti-SLAPP statute. .........................................................1

II.     SPECIAL TIMING FOR ANTI-SLAPP MOTIONS ...........................................................1

III.    MOTION TO DISMISS STANDARD....................................................................................1

IV.     OREGON'S SPECIAL MOTION TO STRIKE STANDARD .............................................2

V.      INCORPORATION BY REFERENCE ...................................................................................4

VI.     INTRODUCTION AND BACKGROUND ............................................................................4

        A.      The Portland City Auditor's Office .........................................................................4

        B.      The Anonymous City of Portland Fraud Hotline......................................................5

        C.      Plaintiff's First Amended Complaint and the Fraud Hotline Report (FHR) ...........6

        D.      Statements Before the Oregon Ethics Commission .................................................8

VII.    ARGUMENT ............................................................................................................................9

        A.      The Court should dismiss Plaintiff's First Claim for Relief, Marital
                Discrimination, because Plaintiff's factual allegations do not establish (1)
                discrimination based on marital status or (2) any form of adverse employment
                action taken by City. ..............................................................................................9

                1.      No discrimination based on marital status ...................................................9

                2.      No adverse employment action..................................................................10

        B.      The Court should dismiss Plaintiff's Second Claim for Relief, Defamation,
                because Plaintiff's factual allegations do not establish the claim for relief as a
                matter of law; Defendant's actions are absolutely privileged..............................12

                1.      Plaintiff's Second Claim for Relief does not allege sufficient facts to

       support her cause of action ........................................................................12

    2.    Defendant City's actions are absolutely privileged ...................................13

C.    The Court should dismiss Plaintiff's Third Claim for Relief, Abuse of Process, because Plaintiff's factual allegations do not establish the claim for relief as a matter of law; Plaintiff fails to allege either an actual arrest or seizure to support her common law claim for relief...........................................................................15

D.    The Court should dismiss Plaintiff's Fourth Claim for Relief, "Violation of 42 U.S.C. § 1983 (Due Process)," because Plaintiff has no property interest in her reputation as a matter of law, Plaintiff was not deprived of any property interest in her job, and because the individual Defendants' actions are covered by qualified immunity.................................................................................................................16

    1.    Plaintiff's Fourth Claim for Relief fails to state a claim for relief.............16

    2.    Defendants' actions are subject to qualified immunity.............................18

E.    In the event that Plaintiff's Claims for Relief are not dismissed as described above, the Court should strike any and all remaining Claims for Relief pursuant to ORS 31.150, Oregon's Anti-SLAPP statute.........................................................19

VIII.    CONCLUSION...............................................................................................................21

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
(503) 823-4047

Table of Authorities

Federal Cases

*Anderson v. Creighton,*
   483 U.S. 635 (1987)..................................................................................18, 19
*Ashcroft v. al-Kidd,*
   563 U.S. 731 (2011) ........................................................................................19
*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ..........................................................................................2
*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007)...........................................................................................2
*Board of Regents of State Colleges v. Roth,*
   408 U.S. 564, 92 S.Ct. 2701 (1972)..........................................................16, 17
*Brooks v. City of San Mateo,*
   229 F.3d 917 (9th Cir. 2000) ...........................................................................11
*Burlington Northern and Santa Fe Railway Co. v. White,*
   548 U.S. 53 (2006)...........................................................................................11
*Carey v. Piphus,*
   435 U.S. 247, 98 S.Ct. 1042 (1978).................................................................17
*Cleveland Bd. Of Educ. v. Loudermill,*
   470 U.S. 532 (1985).........................................................................................17
*Dahlia v. Rodriguez,*
   735 F.3d 1060 (9th Cir. 2013) .........................................................................11
*Daniels-Hall v. Nat'l Educ. Ass'n,*
   629 F.3d 992 (9th Cir. 2010) .............................................................................2
*Harlow v. Fitzgerald,*
   457 U.S. 800 (1982).........................................................................................18
*Hashimoto v. Dalton,*
   118 F.3d 671 (9th Cir. 1997) ...........................................................................11
*Hope v. Pelzer,*
   536 U.S. 730 (2002).........................................................................................19
*Horton by Horton v. City of Santa Maria,*
   915 F.3d 592 (9th Cir. 2019) ...........................................................................18
*Hunter v. Bryant,*
   502 U.S. 224 (1991).........................................................................................18
*Kelly v. Smith,*
   764 F.2d 1412 (11th Cir. 1985) .......................................................................17
*Lauro v. Charles,*
   219 F.3d 202 (2d Cir. 2000).............................................................................18
*Little v. Windermere Relocation, Inc.,*
   301 F.3d 958 (9th Cir. 2002) ...........................................................................11
*Manatt v. Bank of Am., NA,*
   339 F.3d 792 (9th Cir. 2003) ...........................................................................11

Page  iv  –   DEFENDANTS' MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE

*Miller v. Fairchild Indus., Inc.,*
   885 F.2d 498 (9th Cir. 1989) ............................................................ 11

*Mishler v. Clift,*
   191 F.3d 998 (9th Cir. 1999) .............................................................. 1

*Parratt v. Taylor,*
   451 U.S. 527, 101 S.Ct. 1908 (1981).................................................. 17

*Passantino v. Johnson & Johnson Consumer Prods., Inc.,*
   212 F.3d 493 (9th Cir. 2000) ............................................................ 11

*Paul v. Davis,*
   424 U.S. 693, 96 S.Ct. 1155 (1976).................................................... 18

*Pearson v. Callaghan,*
   555 U.S. 223 (2009).......................................................................... 18

*Richardson v. Nw. Christian Univ.,*
   242 F. Supp. 3d 1132 (D. Or. 2017) ............................................. 9, 10

*Saucier v. Katz,*
   533 U.S. 194 (2001).......................................................................... 18

*Siegert v. Gilley,*
   500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991)..................... 18

*White v. Pauly,*
   137 S. Ct. 548 (2017)........................................................................ 19

State Cases

*Binder v. Oregon Bank,*
   284 Or. 89 (1978)............................................................................. 13

*Boardmaster Corp. v. Jackson Cnty.,*
   224 Or App 533 (2008).................................................................. 2, 4

*Brood v. Davis,*
   42 Or. App. 587, 601 P.2d 487 (1979)............................................. 15

*Ducosin v. Mott,*
   292 Or. 764 (1982)........................................................................... 13

*Franson v. Radich,*
   84 Or. App. 715, 735 P.2d 632 (1987).............................................. 13

*Johnson v. Brown,*
   193 Or. App. 375, 91 P.3d 741 (2004)........................................ 14, 15

*Kelly v. McBarron,*
   258 Or. 149, 482 P.2d 187 (1971) .................................................... 15

*Larsen v. Credit Bureau,*
   279 Or. 405, 568 P.2d 657 (1977) .................................................... 15

*Moore v. West Lawn Mem'l Park,*
   266 Or. 244 (1973)........................................................................... 13

*Neumann v. Liles,*
   358 Or 706 (2016)............................................................................. 2

*Ramstead v. Morgan,*
   219 Or. 383 (1959)........................................................................... 13

Page v –   DEFENDANTS' MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE

*Staten v. Steel*,
    222 Or App 17 (2008) ........................................................................................................ 3
*Wallulis v. Dymowski*,
    323 Or. 337, 918 P.2d 755 (1996) ................................................................................... 12
*Young v. Davis*,
    259 Or App 491 (2013) ..................................................................................................... 3

Federal Statutes

42 U.S.C. § 1983 .................................................................................................... passim

Federal Rules

FRCP 12(b)(6) ............................................................................................................ 1

Page  vi  –    DEFENDANTS' MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE

## **LR 7-1 CERTIFICATION**

In accordance with L.R. 7.1(a)(1)(A), counsel for Defendant City of Portland ("City") conferred in good faith with Plaintiff's counsel prior to filing this Motion. Plaintiff opposes this Motion. The Court's intervention is required.

## I.    **MOTIONS**

A.    The Court should dismiss Plaintiff's First Claim for Relief, Marital Discrimination, because Plaintiff's factual allegations do not establish (1) discrimination based on marital status or (2) any form of adverse employment action taken by City.

B.    The Court should dismiss Plaintiff's Second Claim for Relief, Defamation, because Plaintiff's factual allegations do not establish the claim for relief as a matter of law; Defendant's actions are absolutely privileged.

C.    The Court should dismiss Plaintiff's Third Claim for Relief, Abuse of Process, because Plaintiff's factual allegations do not establish the claim for relief as a matter of law; Plaintiff fails to allege either an actual arrest or seizure to support her common law claim for relief.

D.    The Court should dismiss Plaintiff's Fourth Claim for Relief, "Violation of 42 U.S.C. § 1983 (Due Process)," because Plaintiff has no property interest in her reputation as a matter of law, Plaintiff was not deprived of any property interest in her job, and because the individual Defendants' actions are covered by qualified immunity.

E.    In the event that Plaintiff's Claims for Relief are not dismissed as described above, the Court should strike any and all remaining Claims for Relief pursuant to ORS 31.150, Oregon's Anti-SLAPP statute.

## II.    **SPECIAL TIMING FOR ANTI-SLAPP MOTIONS**

A hearing on an anti-SLAPP motion should occur "not more than 30 days after the filing of the motion unless the docket conditions of the court require a later hearing." ORS 31.152(1).

## III.    **MOTION TO DISMISS STANDARD**

When analyzing a motion to dismiss under FRCP 12(b)(6), the Court must accept as true the factual allegations contained in the Complaint and construe them in the light most favorable to the plaintiff. *Mishler v. Clift,* 191 F.3d 998, 1003 (9th Cir. 1999). To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient facts that "state a claim to relief that is

Page  1  –    DEFENDANTS' MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE

plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. "A federal claimant is not required to detail all factual allegations; however, the complaint must provide 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *Twombly,* 550 U.S. at 544, 555.

"Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* "This standard does not require detailed factual allegations, but does demand more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal,* 556 U.S. at 678. On a motion to dismiss, the Court must assume facts alleged in the complaint are true and view them in a light most favorable to Plaintiff, but the Court need not accept as true conclusory statements, threadbare recitation of the elements of their claims, or legal conclusions. *Iqbal,* 556 U.S. at 678. Nor must the Court accept as true factual allegations that contradict "matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). The Court may also consider any exhibits incorporated by reference into the complaint. *Boardmaster Corp. v. Jackson Cnty.*, 224 Or App 533, 535 (2008).

## IV.    OREGON'S SPECIAL MOTION TO STRIKE STANDARD

Oregon's Anti-Strategic Lawsuits Against Public Participation (anti-SLAPP) statute, ORS 31.150, creates a two-step procedure for the efficient disposition of unfounded lawsuits attacking certain types of public speech. "Oregon's anti-SLAPP statute creates an expedited procedure for dismissal of certain nonmeritorious civil cases without prejudice at the pleading stage." *Neumann v. Liles,* 358 Or 706, 723 (2016). It exists "to provide for the dismissal of claims against persons participating in public issues… before the defendant is subject to

Page 2 –    DEFENDANTS' MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE

substantial expenses in defending against them" through the creation of a "special motion to strike against a claim that arises out of the exercise of the right of petition or free speech in connection with a public issue or an issue of public interest." *Staten v. Steel*, 222 Or App 17 (2008), *rev den*, 345 Or 618 (2009).

ORS 31.150 "requires that the court engage in a two-step burden-shifting process." *Young v. Davis*, 259 Or App 491, 501 (2013). First, the Defendant has the "initial burden to show that the claim against which the motion is made 'arises out of one or more protected activities" described in ORS 31.150(2). *Id*. If the Defendant meets their initial burden, "the burden shifts to the plaintiff in the action to establish that there is a probability that the plaintiff will prevail on the claim by presenting substantial evidence to support a prima facie case." ORS 31.150(3). If the {laintiff does not meet his burden at the second step of the analysis, the motion to strike is granted and the claim is dismissed. ORS 31.150(1).

The anti-SLAPP procedure protects four categories of protected activity:

> (a) Any oral statement made, or written statement or other document submitted, in a … judicial proceeding or other proceeding authorized by law;

> (b) Any oral statement made, or written or other document submitted, in connection with an issue under consideration or review by a … judicial body or other proceeding authorized by law;

> (c) Any oral statement made, or written statement or other document presented, in a place open to the public or a public forum in connection with an issue of public interest; or

> (d) Any other conduct in furtherance of the exercise of the constitutional right of petition or the unconstitutional right of free speech in connection with a public issue or an issue of public interest.

ORS 31.150(2). Defendants' initial burden is to show that Plaintiff's claims fall into one of those four categories. The burden then shifts to Plaintiff to show that she is likely to prevail on her claims.

Page 3 –    DEFENDANTS' MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE

## V.    INCORPORATION BY REFERENCE

Because the Court may consider any exhibits incorporated by reference into the complaint in considering a motion to dismiss, *Boardmaster Corp. v. Jackson Cnty.*, 224 Or App 533, 535 (2008), Defendants ask the Court to consider the following exhibits incorporated by reference into Plaintiff's First Amended Complaint:

- PORTLAND CITY AUDITOR'S OFFICE, "City of Portland, Oregon Fraud Hotline Report," https://www.portland.gov/sites/default/files/2021/tip-alleged-procurement-and-ethics-violations-within-the-water-bureau.pdf (Feb. 27, 2020) (hereafter "the FHR").

    o   Referenced in F. Am. Compl. at ¶ 7-10

- An audio recording of the Oregon Ethics Commission Meeting (Ms. Koch's matter begins at 47:50, ending at 1:03:55), https://www.oregon.gov/ogec/about-us/Documents/Commission%20Meetings/Audio%20Recordings/2020/2020%2c06-26%20Exec%20Session.mp3 (June 26, 2020).

    o   Referenced in F. Am. Compl. at ¶ 8, 10

## **MEMORANDUM OF LAW**

## VI.    INTRODUCTION AND BACKGROUND

### A.    The Portland City Auditor's Office

"Portland has had a City Auditor since 1868, and the position has been elected by voters since 1891." "About the Auditor's Office," https://www.portland.gov/auditor/about (last accessed Aug. 18, 2021). As the sixth elected official in Portland's government, the Auditor is accountable only to the public. *Id.* "The mission of the Auditor's Office is to promote open and accountable government by providing independent and impartial reviews, access to public information, and services for City government and the public." *Id.* The Office is comprised of five divisions. The divisions "primarily responsible for ensuring the City is accountable are Audit Services, Independent Police Review, and the Ombudsman." *Id.*

Page 4 –    DEFENDANTS' MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE

"The Audit Services Division is the auditing branch of the elected City Auditor's Office. The Division's mission is to conduct performance and financial audits of City operations, and to make recommendations to improve efficiency, effectiveness and equity of City bureaus, offices and functions." "Audit Services," https://www.portland.gov/audit-services (last accessed Aug. 18, 2021). The Fraud Hotline is a subdivision of the Audit Services Division that "provides City of Portland employees and the public with a confidential mechanism to report suspected fraud, waste or misuse of City resources, and abuse of position." "Fraud Hotline," https://www.portland.gov/audit-services/fraud-hotline (last accessed Aug. 18, 2021). "An anonymous reporting system like this can be the most useful tool in discovering and reducing losses due to fraud, waste or misuse of City resources, and abuse of position. Having a reporting system also reinforces the message that all City officials and employees are expected to follow the highest standards of ethical and legal behavior and to act as stewards of public resources." "Frequently Asked Questions," https://www.portland.gov/audit-services/fraud-hotline/frequently-asked-questions (last accessed Aug. 18, 2021). "The City Auditor contracts with an outside company, EthicsPoint to take reports … anonymous[ly] [], 24-hours a day and 365 days a year[.]" *Id.*

> B.    The Anonymous City of Portland Fraud Hotline

The fraud hotline is established under ORS 297.760 - 297.765, which set the rules for a local government body to operate a "local government waste hotline." Under that statute, the government body operating the hotline—here, Audit Services—"**shall** conduct an initial investigation of each report of waste, inefficiency or abuse." ORS 297.765(3) (emphasis added). ORS 297.765 provides that absent a specific exemption, "the identity of any person calling the hotline or otherwise making a report under ORS 297.760 (Establishment of local government waste hotline) is confidential;" that said, a "person making a report under ORS 297.760 may waive the confidentiality otherwise granted under this subsection." While Plaintiff complains

Page 5 –    DEFENDANTS' MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE

that the fraud hotline tip was anonymous, anonymity is a whistleblower's statutorily guaranteed right. *Cf.* F. Am. Compl. ¶ 6, 8, 9.

If a fraud hotline investigation reveals waste, inefficiency, or abuse occurred, the Auditor's Office must publish its written determinations. ORS 297.765(4). The Auditor's Office releases its public reports through standard media releases; all public reports are treated exactly the same. Fraud hotline report summaries are available on the Office's website: https://www.portland.gov/audit-services/news/reports. Additionally, if the Auditor's Office "determines during the investigation that a violation of any provision of ORS Chapter 244 **may** be occurring or **may** have occurred, the [office] **shall** notify the Oregon Government Ethics Commission of the potential violation." ORS 297.765(5)(a).

C.    Plaintiff's First Amended Complaint and the Fraud Hotline Report (FHR)

Plaintiff Kathryn Koch is the City of Portland Water Bureau Director of Customer Services (F. Am. Compl. ¶ 6), and in that role she "manages account services, billing and collection, quality assurance, meter reading, meter maintenance and repair, and data processing." *Water Bureau: About Us - Leadership*, https://www.portland.gov/water/about-us#toc-leadership (last visited Aug. 18, 2021). Plaintiff is married to Jon Koch. F. Am. Compl. ¶ 13. In March 2019, "an anonymous tip was made to the City of Portland's Fraud Hotline which alleged procurement and ethics violations in the Water Bureau's purchasing of water meter equipment from a vendor without a competitive contract." F. Am. Compl. ¶ 6. As summarized in the FHR— which Plaintiff alleges forms the foundation of her claims for relief—the tip indicated that "Water Bureau employees made inappropriate equipment purchases, had financial interests in the outcome of those purchasing decisions, and bought unnecessary equipment," specifically water meters, "that caused production issues in another bureau." FHR.

The FHR continued with its investigation findings:

> Evidence indicated Water Bureau purchases violated State Law and City Code.

Page 6 –    DEFENDANTS' MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE

> **Purchasing records over an 18-month** period ending June 2019 show that two Water Bureau programs frequently purchased water meter equipment **from one vendor without a competitive contract. Purchases totaled $182,382**.
>
> City and State procurement rules prohibit breaking purchases into smaller amounts to circumvent competitive procedures, which is known as "**fragmenting**." Purchases exceeding $10,000 must be made through a more complex competitive procedure, according to State Law and City Code.
>
> Evidence showed Bureau staff made water meter equipment purchases just under the $10,000 threshold 18 times from January 2018 to June 2019, amounting to more than $160,000.

Although no person is named in the FHR and the FHR uses language like "the manager" and "the manager's spouse," Plaintiff concedes in her Complaint that the report is about her and her spouse. Plaintiff does not dispute that her "husband, Mr. Koch, [] was employed by the company [from whom] the water meters were purchased," a relationship for which there was no disclosure on file. F. Am. Compl. ¶ 7. Plaintiff was aware of City rules and State law regarding nepotism, self-dealing, conflicts of interest, and as such had "previous[ly] disclos[ed] … [her relationship with Mr. Koch] while Mr. Koch worked for a different company." *Id.* Plaintiff alleges that because her marriage to Mr. Koch was "common knowledge within the agency," Plaintiff did not need to file another disclosure of relationship after Mr. Koch moved to a new company. F. Am. Compl. ¶ 7.

Additionally, Plaintiff alleges that she did not oversee "much of the procurement[.]" *Id.* Plaintiff alleges that the "vast majority" of the purchases that favored her husband's sales "fall[] outside of her authority." F. Am. Compl. ¶ 6. Notably, Plaintiff does not allege that all of the questionable purchases fell out of her direct scope of authority. Additionally, although Plaintiff alleges that she "did not have the <u>direct</u> supervisory authority over the purchases in question," she does not allege that she had <u>no</u> supervisory authority over the purchases in question. *Id.* (emphasis added). Plaintiff does not dispute that inappropriate "fragmenting" of purchase orders

Page 7 –    DEFENDANTS' MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE

occurred in favor of her husband's company, only that "the responsibility placed on her" for it "was not accurate." Plaintiff concludes, indicating that despite the Auditor's FHR, her own Bureau decided not to discipline her. F. Am. Compl. ¶ 8. This is not a surprising result, considering the independence of City Bureaus; Plaintiff was an employee of the Water Bureau, not the City Auditor's Office. F. Am. Compl. ¶ 6 (Plaintiff is Water Bureau employee). The Auditor's Office has no ability to supervise, hire, fire, or impose discipline on Plaintiff, a non-employee.

Plaintiff does not allege in her Complaint that she did *nothing* wrong. To the contrary, she alleges that she did not do *very much* that was wrong.

    D.    Statements Before the Oregon Ethics Commission

Plaintiff also alleges that being brought before the Oregon Ethics Commission forms one of the two bases for her claims, and thus the Court should properly consider the audio recording of that proceeding as incorporated by reference into the complaint, or otherwise to take judicial notice of the proceeding. The foregoing, *supra*, is consistent with the statements Plaintiff's OEC attorney made before the Oregon Ethics Commission and with the comments by the Oregon Ethics Commissioners. Based on materials related to Ms. Koch's failure to disclose her conflict of interest, the Commission staff concluded that "information indicates that there is cause to believe that a violation of ORS 244.120 and ORS 244.040 may have occurred." Oregon Ethics Commission Meeting, https://www.oregon.gov/ogec/about-us/Documents/Commission%20 Meetings/Audio%20Recordings/2020/2020%2c06-26%20Exec%20Session.mp3 (June 26, 2020) (matter at 47:50 - 1:03:55).

The recording of the hearing reflects that Ms. Koch's lawyer did not deny an ethics violation or challenge the evidence. He argued that "to the extent there were ethical violations with respect to the P-Card, they were **unintentional**." He told the Commission that Ms. Koch "has **learned a lesson from this**" and "**put in place the disclosure that was required**."

Page 8 –    DEFENDANTS' MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE

One Commissioner commented that Ms. Koch's conduct "**may technically rise to a violation**." One Commissioner suggested sending a "**letter of education**" to Ms. Koch. Another Commissioner noted that Ms. Koch was "**getting education live**." The Commission was advised that sending a letter of education was not a procedural option, and so they dismissed the complaint rather than investigate further. There was no indication during the hearing, including in comments by Ms. Koch's lawyer, that the Commission's claim or the Auditor's Report was unfounded. All indications were that it was well-founded but needed no further action.

Plaintiff alleges that City was incorrect in two specific actions: (1) publishing the FHR that did not name her or her husband by name; and (2) publishing the FHR to the Oregon Ethics Commission.

Neither of these alleged wrongful acts are wrongful as a matter of law. Rather, both acts were compelled by Oregon law. ORS 297.765(4) (if fraud hotline investigation reveals waste, inefficiency, or abuse, the Auditor's Office **must** publish its written determinations); ORS 297.765(5)(a) (if the Auditor's Office "determines during the investigation that a violation of any provision of ORS Chapter 244 **may** be occurring or **may** have occurred, the [office] **shall** **notify** the Oregon Government Ethics Commission of the potential violation.").

Plaintiff's claims should be dismissed with prejudice and without leave to amend.

## VII.  ARGUMENT

A. <u>The Court should dismiss Plaintiff's First Claim for Relief, Marital Discrimination, because Plaintiff's factual allegations do not establish (1) discrimination based on marital status or (2) any form of adverse employment action taken by City</u>.

1.  No discrimination based on marital status

Oregon law prohibits employment discrimination on the basis of marital status. ORS 659A.030(1). The key word here is "status," i.e., whether someone is married, divorced, single, cohabitating, etc. *See also Richardson v. Nw. Christian Univ.*, 242 F. Supp. 3d 1132, 1149 (D. Or. 2017) (Christian university's rules against unmarried cohabitation is marital status

Page 9 –   DEFENDANTS' MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE

discrimination). In contrast, what is at issue in this case is Plaintiff's admitted rule violation. As alleged in the complaint, Plaintiff's marital status was well known throughout the bureau, and she had a decorated career of more than 30 years without any issue, let alone objection to her marital status. While conduct and status are often closely intertwined, as was the case in *Richardson*, in this case there is no nexus. The allegation in this matter was not that Plaintiff was married and that this was somehow bad—to the contrary, long-term heterosexual marriages are held in the highest esteem worldwide, while all other marital statuses are held in lesser esteem, ranging from neutral acceptance to broad public opprobrium. The concern, even as articulated by Plaintiff in her Complaint, was that Plaintiff engaged in self-dealing, that commissions her spouse earned from sales to the City of Portland rendered her personal financial benefit. Plaintiff in essence contends Oregon's nepotism laws and City's ethics rules are unlawful employment practices. Such a finding is untenable under the statutory definition of a relative under Oregon nepotism laws. In general, when a provision in ORS Chapter 244 refers to "relative" it includes spouses, parents, stepparents, children, siblings, stepsiblings, sons-in-law, daughters-in-law, people for whom the public official has a legal support obligation, people benefiting from a public official when benefits are from the public official's public employment, and people who benefit a public official or candidate when benefits are from the person's employment.

Nepotism laws and similar anti-self-dealing administrative rules don't violate the prohibition on marital status discrimination. They regulate specific conduct towards those with whom we have close personal connections, far beyond our statuses as single, divorced, or married.

### 2.    No adverse employment action

"It is an unlawful employment practice [f]or an employer, because of an individual's … marital status … to refuse to hire or employ the individual or to bar or discharge the individual from employment." ORS 659A.030(1). Marital status discrimination claims thus require an

Page  10  –   DEFENDANTS' MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE

allegation of a protected marital status class, an adverse employment action, and a causal connection ("because of") between the two. Other employment discrimination statutes opining what amounts to an adverse employment action offer that it should be a "discharge, demot[ion], suspen[sion]," etc. that affects the Plaintiff's "promotion, compensation or other terms, conditions or privileges of employment." ORS 659A.199. While adverse employment actions take many forms, Plaintiff has not articulated any actionable adverse **employment** actions. She has not been fired, disciplined, or placed on forced unpaid leave—the classic adverse employment actions. F. Am. Compl. ¶ 7 ("Water Bureau determined discipline was not warranted"); ¶ 8 (Human Resources determined no further action was needed). Plaintiff still works for the City.

She has not been deprived of the ability to take a promotional exam or lost pay (*Dahlia v. Rodriguez*, 735 F.3d 1060, 1078 (9th Cir. 2013)); she has not been denied a transfer (*Manatt v. Bank of Am., NA,* 339 F.3d 792, 802 (9th Cir. 2003)); she has not received a cut in base pay (*Little v. Windermere Relocation, Inc.,* 301 F.3d 958, 970 (9th Cir. 2002)); she has not received an artificially low rating on a performance review that materially affected her employment or refused promotion for which she applied (*Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 500–01, 506 (9th Cir. 2000)); she has not been given a negative job reference (*Hashimoto v. Dalton*, 118 F.3d 671, 674 (9th Cir. 1997)); she has not been laid off (*Miller v. Fairchild Indus., Inc.*, 885 F.2d 498, 505 (9th Cir. 1989)).

Ostracism by coworkers—as Plaintiff appears to describe in her Complaint when she indicates it was "more difficult to properly run her department while there were questions circulating around her ethics"—is not actionable under Ninth Circuit precedent. *Brooks v. City of San Mateo*, 229 F.3d 917, 929 (9th Cir. 2000). **An adverse employment action must be "materially adverse" to sustain a cause of action**; the employment laws are not a civility code. *Burlington Northern and Santa Fe Railway Co. v. White*, 548 U.S. 53, 68 (2006).

Page 11 –   DEFENDANTS' MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE

Because Plaintiff fails to properly allege marital *status* discrimination and fails to allege a materially adverse employment action—or truly, any *employment* action at all—to support her claim for marital status discrimination, this claim should be dismissed with prejudice.

B.      The Court should dismiss Plaintiff's Second Claim for Relief, Defamation, because Plaintiff's factual allegations do not establish the claim for relief as a matter of law; Defendant's actions are absolutely privileged.

1.      Plaintiff's Second Claim for Relief does not allege sufficient facts to support her cause of action

To establish a claim for defamation, a Plaintiff must show that a Defendant made a defamatory statement about the Plaintiff and published the statement to a third party. *Wallulis v. Dymowski*, 323 Or. 337, 342–43, 918 P.2d 755 (1996) (so holding). The basis of Plaintiff's claim for defamation against City is that the Auditor's Office published a standard report, as it does for all Fraud Hotline Reports consistent with its obligation to do so under Oregon law; this report automatically goes to all persons who are subscribed to such alerts. Distribution to the Oregon Ethics Commission is likewise required under Oregon law.

If a fraud hotline investigation reveals waste, inefficiency, or abuse occurred, the Auditor's Office must publish its written determinations. ORS 297.765(4). Additionally, if the Auditor's Office "determines during the investigation that a violation of any provision of ORS Chapter 244 **may** be occurring or **may** have occurred, the [office] **shall** notify the Oregon Government Ethics Commission of the potential violation." ORS 297.765(5)(a).

Notably, the Fraud Hotline Report, incorporated by reference into the Complaint, does not contain Plaintiff's or Plaintiff's spouse's name anywhere in the FHR. As such, the FHR itself cannot form the basis for Plaintiff's claims, despite her repeated assertions in the Complaint. F. Am. Compl. ¶ 7-10. Furthermore, Plaintiff does not wholly disclaim the conduct alleged in the FHR in her Complaint; Plaintiff alleges, essentially, that she made some errors but does not believe them to be of the magnitude that the Auditor's Office thought them to be. Plaintiff points to no particular statements in the FHR that she alleges are defamatory to her personally.

Page 12 –   DEFENDANTS' MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE

Plaintiff's factual allegations do not establish defamation as a cause of action and her Second Claim for Relief should be dismissed.

           2.        Defendant City's actions are absolutely privileged

There are two forms of privilege that may apply in a defamation action; a defamatory statement may be either "absolutely privileged" or "qualifiedly privileged." An "absolute privilege" bars a claim for defamation outright, without further inquiry into the speaker's state of mind. *Moore v. West Lawn Mem'l Park*, 266 Or. 244, 249 (1973) ("[w]hen defamatory matter is absolutely privileged no cause of action exists"). "Although, ordinarily, absolute privilege is an affirmative defense that must be raised by answer, it may be raised by motion to dismiss if the amended complaint alleges facts which, if true, establish the privilege." *Franson v. Radich*, 84 Or. App. 715, 718–19, 735 P.2d 632, 634 (1987). Plaintiff's Complaint alleges facts that establish the privilege.

Specifically, statements that are made in the institution of or during the course of judicial and quasi-judicial proceedings are absolutely privileged. *Ducosin v. Mott*, 292 Or. 764, 768, 770 (1982) (communications to a medical examiner suggesting a possible homicide should be "cloaked with an absolute privilege," because those communications are "an initial step in a judicial proceeding"); *Binder v. Oregon Bank*, 284 Or. 89, 91 (1978) ("[s]tatements made by parties to judicial proceedings are absolutely privileged"); *Moore v. W. Lawn Mem'l Park, Inc.*, 266 Or. 244, 512 P.2d 1344 (1973) (communications made to State Board of Funeral Directors and Embalmers, when that Board is sitting in its quasi-judicial function as a licensing body, are absolutely privileged); *Ramstead v. Morgan*, 219 Or. 383, 401 (1959) (absolute privilege attached to former client's statements to a State Bar committee concerning alleged attorney misconduct, because Bar committee was serving a judicial or quasi-judicial function). Likewise, any submission that PPB (*Ducosin*) or OEC (*West Lawn Mem.*) received from the Auditor's Office, is absolutely privileged and Plaintiff's claims are subject to dismissal with prejudice.

Page  13  –   DEFENDANTS' MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE

The result is no different for City's internal investigation; those statements as well are absolutely privileged. Absolute privilege precludes liability regardless of the Defendant's state of mind. *Id*. "Oregon cases have applied absolute privilege to governmental settings in which the '**[t]he public's interest in the unhampered operation of the government, when exercising such functions, outweighs an individual's interest in the preservation of reputation**.'" *Johnson v. Brown*, 193 Or. App. 375, 381, 91 P.3d 741, 744 (2004) (emphasis added) (internal citations omitted).

"Communications protected by absolute privilege include those made in the course of, or sufficiently incidental to, judicial and quasi-judicial proceedings ...; statements made by legislative officials in the course of their duties ...; **and statements made by executive branch officials in the performance of their governmental duties**." *Id*. at 381, 91 P.3d at 744–45 (internal citations omitted). In *Johnson v. Brown*, the Oregon Court of Appeals considered whether an employee, who made allegedly defamatory statements during her government-employer's investigation into her supervisor's work-related misconduct, could raise the defense of absolute privilege. In that case, the Circuit Court granted summary judgment to defendants on the ground that the employee's statements were absolutely privileged, and the Oregon Court of Appeals affirmed. The *Johnson* defendants argued that absolute privilege should apply to statements made by governmental employees in the course of an internal investigation – exactly the kind presented here. *Johnson*, 193 Or. App. at 382, 91 P.3d at 745.

The defense of absolute privilege is most commonly available when the defamatory statements have some relation to a governmental function: here, the Auditor was serving in her most traditional function—auditing City waste and abuse, the core function of her position. Public policy considerations dictate that participants in the governmental process be encouraged to speak candidly, uninhibited by the fear of possible civil liability for defamation. The absolute privilege thus extends to public officials at all levels of government with respect to statements

Page  14  –   DEFENDANTS' MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE

made in the performance of their official duties, and, in more limited circumstances, to private citizens who participate in the governmental process. *Id*. at 375, 383, 91 P.3d at 746. The court noted that *Shearer* was the controlling case in Oregon for the application of absolute privilege to the actions of public officials at all levels of government in the performance of their official duties. *Id*. There, the Oregon Supreme Court held that "absolute privilege should apply in that circumstance for the same reasons that the privilege applies in the judicial and legislative contexts—that is, because the public interest in **fearless action on the part of public officers outweighs the interests of persons who might be damaged by those actions**." *Id*. at 384, 91 P.3d at 746 (internal citations omitted).

The Court should dismiss Plaintiff's Second Claim for Relief, Defamation, on the grounds of absolute privilege and for failure to state a claim for relief.

      C.    <u>The Court should dismiss Plaintiff's Third Claim for Relief, Abuse of Process, because Plaintiff's factual allegations do not establish the claim for relief as a matter of law; Plaintiff fails to allege either an actual arrest or seizure to support her common law claim for relief.</u>

Abuse of process is a common law tort controlled by state law. In *Larsen v. Credit Bureau*, 279 Or. 405, 408, 568 P.2d 657, 658 (1977), the Oregon Supreme Court stated: "Abuse of process is the 'perversion of legal procedure to accomplish an ulterior purpose when the procedure is commenced in proper form and with probable cause.'" *Brood v. Davis*, 42 Or. App. 587, 593, 601 P.2d 487, 491 (1979), *on reconsideration*, 44 Or. App. 261, 605 P.2d 749 (1980) (citing *Larsen*).

Abuse of process requires "<u>either an actual arrest or a seizure of property</u>." *Brood*, 42 Or. App. at 594, 601 P.2d at 491. The cases dealing with abuse of process involve civil litigation proceedings, garnishments, and liens. *See, e.g., Brood* (Court dismissing argument that an action for replevin was an abuse of process where the suing-entity knew he was not in possession of the property sought); *Larsen*, 279 Or. at 407, 568 P.2d at 658 (creditor sued garnishee despite full payment of debt owed); *Kelly v. McBarron*, 258 Or. 149, 482 P.2d 187 (1971) (action by lumber

Page  15  –   DEFENDANTS' MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE

broker against another lumber broker alleging that defendant wrongfully and maliciously filed a mechanic's lien).

To the extent that Plaintiff's abuse of process claim is based on her opinion that she was wrongfully or insufficiently investigated, *see* F. Am. Compl. ¶ 18, Plaintiff's claim for abuse of process fails because internal City investigations are not civil proceedings, legal proceedings, garnishments, or liens, and Plaintiff does not allege she suffered any seizure or arrest. To the extent that Plaintiff's abuse of process claim is based on the OEC voluntarily choosing to investigate Plaintiff after receiving the Auditor's statutorily required report under ORS 297.765(5)(a) (if the Auditor's Office "determines during the investigation that a violation of any provision of ORS Chapter 244 **may** be occurring or **may** have occurred, the [office] **shall** notify the Oregon Government Ethics Commission of the potential violation."), again, that administrative inquiry is not a not civil proceeding, legal proceeding, garnishment, or lien.

Most critically, because abuse of process requires "either an actual arrest or a seizure of property"—which Plaintiff did not suffer—the elements of her abuse of process claim fail, and the Court should dismiss Plaintiff's Third Claim for Relief with prejudice.

D.    The Court should dismiss Plaintiff's Fourth Claim for Relief, "Violation of 42 U.S.C. § 1983 (Due Process)," because Plaintiff has no property interest in her reputation as a matter of law, Plaintiff was not deprived of any property interest in her job, and because the individual Defendants' actions are covered by qualified immunity.

1.    Plaintiff's Fourth Claim for Relief fails to state a claim for relief

To establish that procedural due process was denied in connection with some employment action such as termination or demotion, the Plaintiff must first show that he or she had a protected property interest in the employment. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 571, 92 S.Ct. 2701, 2706 (1972). In procedural due process claims brought under § 1983, the alleged deprivation by state action of a constitutionally protected property interest is not in itself unconstitutional. What is alleged to be unconstitutional is the deprivation of such an

Page  16  –   DEFENDANTS' MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE

interest without due process of law. *Id.; Parratt v. Taylor*, 451 U.S. 527, 537, 101 S.Ct. 1908, 1913 (1981); *Carey v. Piphus*, 435 U.S. 247, 259, 98 S.Ct. 1042 (1978).

With respect to the pre-termination protection given a public employee, assuming they are *not* at will and have a property interest in continued employment, essential requirements of due process are simply: (1) notice, and (2) an opportunity to respond. The court in *Kelly v. Smith*, 764 F.2d 1412 (11th Cir. 1985) stated that "the pre-termination hearing, though necessary, need not be elaborate." *Id.*, quoting *Cleveland Bd. Of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985).

In the *Kelly* case, the Plaintiff was advised orally by his supervisor that he was being terminated for failing to work on a standby shift. Subsequently, the Plaintiff went to see the city manager, who told him he would have to confer with the Plaintiff's supervisor before he could make a final decision. The Plaintiff then received written notice of his termination a few days later. The written notice stated that Kelly had been terminated for insubordination and failing to work a standby shift. The Eleventh Circuit affirmed the local court's decision and held that the pre-termination procedures afforded the Plaintiff satisfied the requirements of procedural due process. The *Kelly* court ruled that it was clear under *Loudermill* that <u>oral notice and an opportunity to respond orally were sufficient in the pre-termination context and that the Plaintiff had received both</u>. First, Plaintiff does not allege that she was not given oral notice of the investigation; she merely alleges that she was upset that she wasn't personally interviewed. There is no requirement under *Loudermill* or progeny that Plaintiff be interviewed herself.

Most critically, however, Plaintiff has no adverse employment action to support a claim for property deprivation without due process of law. *See supra part* VII.A.2. Even assuming that Plaintiff had a property interest in her continued employment, Plaintiff wasn't disciplined or fired. Plaintiff was not deprived of any property interest in her employment. She still works at the City.

In reality, Plaintiff appears (without ever alleging it) to aver that her property interest was

Page  17  –   DEFENDANTS' MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE

in her *reputational* loss—not employment. It is well settled that defamation is an issue of state law, not of federal constitutional law, and therefore defamation standing alone provides an insufficient basis to maintain a § 1983 action. *Lauro v. Charles*, 219 F.3d 202, 207 (2d Cir. 2000) (*citing Paul v. Davis*, 424 U.S. 693, 699-701, 96 S.Ct. 1155 (1976)). Even where a Plaintiff's allegations can prove a government-imposed stigma, defamation is not, absent more, a deprivation of a liberty or property interest protected by due process. *Siegert v. Gilley*, 500 U.S. 226, 233, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991). "The harmful effects of an injured reputation alone will not suffice as a "burden or alteration of status or rights." Plaintiff's Fourth Claim for Relief should be dismissed for failure to state a claim for relief.

2.    Defendants' actions are subject to qualified immunity

"Qualified immunity protects government officials from liability for civil damages unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 599 (9th Cir. 2019) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Plaintiffs bringing § 1983 claims against individual officers therefore must demonstrate that (1) a federal right has been violated and (2) the right was clearly established at the time of the violation." *Id.* (citing *Pearson v. Callaghan*, 555 U.S. 223, 232 (2009)). This framework is not inflexible, and courts routinely exercise their discretion in deciding which of the two prongs to analyze first. *Pearson*, 555 U.S. at 236. "The privilege is an immunity from suit rather than a mere defense to liability; ... it is effectively lost if a case is erroneously permitted to go to trial." *Saucier v. Katz*, 533 U.S. 194, 200–01 (2001) (quotation marks omitted). Accordingly, courts have "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curium).

The linchpin of qualified immunity is the reasonableness of the official's conduct evaluated in the particularized circumstances with which the official is confronted. *See Anderson*

Page 18 –    DEFENDANTS' MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE

*v. Creighton*, 483 U.S. 635, 638-40 (1987). The U.S. Supreme Court has consistently reiterated that "clearly established law" must not be defined "at a high level of generality." *White v. Pauly*, 137 S. Ct. 548, 552 (2017). Officials are entitled to "fair notice" or "fair warning" that their specific conduct violates a federally protected right. *See Hope v. Pelzer*, 536 U.S. 730, 739-40 (2002). Existing precedent must place the constitutional issue with respect to the official's conduct "beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

In this case, Defendants are entitled to qualified immunity because their actions did not violate Plaintiff's clearly established rights. To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what [the official] is doing violates that right." *Anderson*, 483 U.S. at 640; *see also Hope*, 536 U.S. at 739. Generally, this means that prior mandatory precedent has found that the actions of the defendants were wrongful and violated the Constitutional rights of a plaintiff. Here, Plaintiff can point to no mandatory case precedent—or likely any precedent at all—wherein an Auditor's Office was found to have violated the Constitutional rights of a plaintiff by publishing the factual findings of an investigation into fraud, waste, and abuse, without ever naming the plaintiff herself by name.

Defendants are entitled to qualified immunity and should be dismissed with prejudice.

E. <u>In the event that Plaintiff's Claims for Relief are not dismissed as described above, the Court should strike any and all remaining Claims for Relief pursuant to ORS 31.150, Oregon's Anti-SLAPP statute.</u>

State law required the Auditor's Office to investigate the March 2019 tip. The fraud hotline is established under ORS 297.760-765, which set the rules for a local government body to operate a "local government waste hotline." Under that statute, the government body operating the hotline—here, Audit Services—"**shall** conduct an initial investigation of each report of waste, inefficiency or abuse." ORS 297.765(3). That law also protects the anonymity of anyone making a report, so anonymous tips must be treated the same as all others.

The Auditor's Office did not choose to make the report public or send it to the Ethics

Page 19 –   DEFENDANTS' MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE

Commission. Those steps were **required by the state fraud hotline statute**. ORS 297.765. If in a fraud hotline investigation, the Auditor's Office finds that waste, inefficiency, or abuse occurred, the Auditor's required written determinations are public. ORS 297.765(4). The Auditor's Office releases its public reports through standard media releases. It treated this public report the same as all others. The Auditor's Office did not shop this report to the media or give it any special treatment. Fraud hotline report summaries are available on the Office's website.

Also, if the Auditor's Office "determines during the investigation that a violation of any provision of ORS Chapter 244 may be occurring or may have occurred, the [office] **shall** notify the Oregon Government Ethics Commission of the potential violation." ORS 297.765(5)(a). The Auditor's investigation revealed the possibility of actual and potential conflicts of interest, in violation of ORS Chapter 244. The Auditor's Office had no choice but to notify the Commission of its findings. In this instance, the Commission requested the report from the Auditor's Office after seeing the standard media release, before the Office had an opportunity to notify the Commission. The Commission staff also followed up with questions, which the Auditor's Office answered. The Auditor's Office did not submit a complaint to the Commission or appear before the Commission.

City's initial burden under the Anti-SLAPP law is to show that the defamation claim falls into one of the four statutory categories. As Plaintiff's Complaint is plead, the claims fall under ORS 31.150(2)(a) and/or (c). Because statements made in and submitted to judicial and quasi-judicial proceedings are protected by the Anti-SLAPP law, City easily carries its "initial burden to show that the claim against which the motion is made 'arises out of one or more protected activities'" described in ORS 31.150(2). The burden therefore shifts to Plaintiff to show that she is likely to prevail on the defamation claim. Plaintiff does not contend that the underlying fragmentation did not occur, or that she failed to file the appropriate disclosure of her marriage to the outside salesman, or that she oversaw some of the purchases; she only objects to the

Page 20 –   DEFENDANTS' MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE

characterization of it as intentional or problematic.

The Court should find that Plaintiff's claims are prohibited by ORS 31.150(2)(a) and/or (c), dismiss Plaintiff's claims, and award City its attorney fees and costs. "<u>A defendant who prevails on a special motion to strike made under ORS 31.150 shall be awarded reasonable attorney fees and costs</u>." ORS 31.152(3).

## VIII.   CONCLUSION

Defendant City respectfully requests that the Court grant this Motion to Dismiss, or in the alternative, its Special Motion to Strike, and to award City's attorney fees and costs as permitted under ORS 31.152(3) ("A defendant who prevails on a special motion to strike made under ORS 31.150 (Special motion to strike) shall be awarded reasonable attorney fees and costs[.]") and/or at the Court's discretion.

Dated:  August 19, 2021

Respectfully submitted,

*/s/ Anne Milligan*
ANNE MILLIGAN, OSB # 111615
Deputy City Attorney
Telephone: (503) 823-4047
*Of Attorneys for Defendants*

Page  21  –   DEFENDANTS' MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE