IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **KATHRYN KOCH**, | Case No. 3:21-cv-01191-IM |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **CITY OF PORTLAND**, **MARY HULL CABALLERO**, an individual, **ELIZABETH PAPE**, an individual, and **DEBORAH SCROGGIN**, an individual, | |
| Defendants. | |

Marcus Ian Vejar, Lafky & Lafky, 429 Court Street, NE, Salem, OR 97301. Attorney for Plaintiff.

Anne M. Milligan, City of Portland, 1221 SW Fourth Ave., Suite 430, Portland, OR 97204. Attorney for Defendants.

**IMMERGUT, District Judge.**

This matter comes before this Court on Defendants City of Portland, Mary Hull Caballero, Elizabeth Pape, and Deborah Scroggin's ("Defendants") Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6). ECF 3. Plaintiff Kathryn Koch ("Plaintiff") is the Customer Service Director in the City of Portland's Water Bureau. ECF 1-1 at 2. On June 11, 2021, Plaintiff brought state law claims against Defendants for marital status discrimination,

PAGE 1 – OPINION AND ORDER

O.R.S. 659A.030(1)(b); defamation; and abuse of process; as well as a federal due process claim under 42 U.S.C. § 1983. ECF 1-1 at 4–7. Defendants removed the case to federal court from the Multnomah County Circuit Court on August 12, 2021. ECF 1. On August 19, 2021, Defendants moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, under Oregon's Anti-SLAPP statute, O.R.S. 31.150. ECF 3.

For the following reasons, this Court GRANTS Defendants' Motion to Dismiss. ECF 3. Plaintiff's Complaint, ECF 1-1, is DISMISSED with prejudice.

## STANDARDS

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The court must draw all reasonable inferences from the factual allegations in favor of the plaintiff. *Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit the plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the

PAGE 2 – OPINION AND ORDER

expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (internal quotation marks and citation omitted).

## BACKGROUND

These facts are taken from Plaintiff's first amended complaint. *See Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012) ("On a motion to dismiss, all material facts are accepted as true and are construed in the light most favorable to the plaintiff."). Plaintiff is the Customer Service Director of the City of Portland's Water Bureau. ECF 1-1 at 2. Plaintiff has worked for the City of Portland for about 30 years. *Id*. at 3.

In February 2020, the City of Portland's Fraud Hotline received an anonymous tip, alleging procurement and ethics violations against Plaintiff related to the Water Bureau's purchases of water meter equipment from a vendor without a competitive contract. *Id*. at 2. The Fraud Hotline Report ("FHR"), which does not mention Plaintiff by name, found that over an eighteen-month period, two Water Bureau programs purchased $182,382 of water meter equipment from a single vendor without a competitive contract. Portland City Auditor's Off., Fraud Hotline Report: Tip Alleged Procurement and Ethics Violations Within the Water Bureau 1 (Feb. 2020), https://www.portland.gov/sites/default/files/2021/tip-alleged-procurement-and-ethics-violations-within-the-water-bureau.pdf [hereinafter "FHR"].[1] The FHR further found that

---

[1] This Court has reviewed and considers the Fraud Hotline Report, which Plaintiff incorporates by reference in her Complaint. *See Karasek v. Regents of the Univ. of Cal.*, 956 F.3d

PAGE 3 – OPINION AND ORDER

on eighteen separate occasions, Water Bureau staff made purchases from the vendor of just under $10,000; breaking purchases into smaller amounts to circumvent triggering more competitive processes which apply to purchases exceeding $10,000. This practice, known as "fragmenting," is prohibited by State Law and City Code. *Id*. A Water Bureau supervisor purchased the equipment from a company that employed his manager's spouse—that is, Plaintiff's spouse—who was a former Water Bureau employee. *Id*. at 2. The manager—Plaintiff—oversaw some of these transactions. *Id*. The FHR also found that the manager's spouse was the salesperson on at least some transactions and that he received commissions based on sales volume. *Id*.

The FHR found no evidence that the manager—Plaintiff—disclosed in writing the potential conflict-of-interest or financial interest in her spouse's sales to the Water Bureau, but acknowledged that the manager had disclosed the relationship while her spouse worked for a different company (when outside financial auditors pointed out the issue). *Id*. Ultimately, the Report concluded that the purchases were not unnecessary and did not cause production issues for another bureau. *Id*. The Auditor's Office recommended that the Water Bureau investigate the scope of ethics and procurement violations and take corrective action as needed; develop and implement sound procurement procedures; and implement a conflict-of-interest disclosure system and trainings. *Id*. The Water Bureau agreed to implement these recommendations but determined that employee discipline was not warranted. *Id*.

Plaintiff's complaint does not dispute most of the FHR, but she emphasizes that the Water Bureau ultimately did not discipline her, that she had disclosed her relationship when her

---

1093, 1104 (9th Cir. 2020). This Court notes that the Report states that the tip was made in March 2019, not February 2020 as Plaintiff claims. *See* FHR at 2. This cuts against Plaintiff's allegation that the investigation into the allegations was rushed. *See* ECF 1-1 at 3.

spouse worked at a different company, and that she "did not directly oversee most of the procurement." ECF 1-1 at 2. Plaintiff also asserts that Defendants did not interview her, her spouse, or the Bureau of Purchases during the investigation and that the report inaccurately attributed her with "overseeing of the Storeroom and . . . fragmenting the purchases." *Id.* at 3. Plaintiff accuses Defendants of "tak[ing] the story with the inconsistencies described above to the Portland Police Bureau, members of the media, and the Oregon Ethics Commission (OEC)." *Id*. Defendant also alleges that Defendant Cabellero "'wanted to send a message' by reporting the[ ] claims to the media." *Id*. at 4.

Plaintiff does not allege that she was terminated, demoted, or suspended as a result of the FHR. Rather, Plaintiff alleges that she was forced to hire an attorney to defend herself before the OEC and the alleged ethics violation became a topic of conversation at local and national events she attended and made it harder to run her department properly. *Id*. at 3–4.

## DISCUSSION

### A. Oregon Law on Government Ethics

Because they are relevant to all of Plaintiff's claims, a brief discussion of Oregon's statutory laws on government ethics is salient. Oregon Revised Statute 297.760(1) permits, but does not require, a local government body to establish a "telephone line that is available to public employees and members of the public for the purpose of reporting waste, inefficiency or abuse." If a local government body chooses to establish such a telephone line, Oregon Revised Statute 297.765 establishes some mandatory procedures. The government body "shall conduct an initial investigation of each report," O.R.S. 297.765(3); "shall notify the Oregon Government Ethics Commission of the potential violation," O.R.S. 297.765(5)(a); and "shall notify the appropriate law enforcement agency" if the alleged violation involves "fraud or other criminal activity, O.R.S. 297.765(5)(b). Upon completion of an investigation, the government body "shall

PAGE 5 – OPINION AND ORDER

determine in writing whether officers or employees of the local government body or local service district . . . are engaging in activities that constitute waste, inefficiency or abuse." O.R.S. 297.765(6)(a). Any "written determination prepared under this section is a public record" and "all documents, information or other records relating to the investigation are disclosable public records." O.R.S. 297.765(7).

> Subject to limited exceptions not at issue here:
>
> [A] public official may not use or attempt to use official position or office to obtain financial gain or avoidance of financial detriment for the public official, a relative or member of the household of the public official, or any business with which the public official or a relative or member of the household of the public official is associated, if the financial gain or avoidance of financial detriment would not otherwise be available but for the public official's holding of the official position or office.

O.R.S. 244.040. When met with "an actual or potential conflict of interest," a public official must "notify in writing the person who appointed the public official to office of the nature of the conflict and request that the appointing authority dispose of the matter giving rise to the conflict." O.R.S. 244.120(1)(c). The official need not announce the conflict of interest "more than once on the occasion which the matter out of which the conflict arises is discussed or debated." O.R.S. 244.120(3).

For the purpose of O.R.S. 244.040 and 244.120 and this case, a "relative" includes "[t]he spouse, parent, stepparent, child, sibling, stepsibling, son-in-law or daughter-in-law of the public official," "[t]he parents, stepparent, child, sibling, stepsibling, son-in-law or daughter-in-law of the spouse of the public official," and "[a]ny individual for whom the public official . . . has a legal support obligation." O.R.S. 244.020(16).

## B. Marital Status Discrimination

Plaintiff's first claim for marital status discrimination under Oregon state law must be dismissed because she fails to state a claim upon which relief can be granted. Plaintiff asserts

PAGE 6 – OPINION AND ORDER

that Defendant's investigation constitutes marital status discrimination because "simply the fact that she was married to Mr. Koch implied that an investigation needed to take place by Defendants and that nepotism had surely occurred." ECF 5 at 5. Defendants argue that there was no marital status discrimination at all because the same conduct would have been investigated if the relationship at issue were another one contemplated by anti-nepotism laws and, in any event, Defendant has not articulated any adverse employment action. ECF 3 at 16–18.

It is unlawful for an employer to "refuse to hire or employ [an] individual or to bar or discharge the individual from employment" or to "discriminate against [an] individual in compensation or in terms, conditions or privileges of employment" "because of [that] individual's . . . marital status." O.R.S. 569A.030(1)(a)–(b). Courts construe Oregon's anti-discrimination law broadly "'to promote the beneficial results intended' – *i.e.*, to protect employees from discrimination." *Richardson v. Nw. Christian Univ.*, 242 F. Supp. 3d 1132, 1152 (D. Or. 2017) (quoting *Newell v. Taylor*, 212 Or. 522, 528 (1958)).

Here, even broadly construing the statute, Plaintiff has failed to establish that her marital status was the impetus behind Defendants' investigation of her alleged unethical actions. Plaintiff has alleged no facts suggesting that any Defendant was hostile to her status as a heterosexual, married woman. That Plaintiff's relationship to the vendor was a marital one is immaterial; rather, the fact that the tipster had accused Plaintiff of improperly awarding contracts to a *relative* triggered the mandatory investigation. Had Plaintiff been accused of awarding contracts to a child, brother- or sister-in-law, or other person enumerated in O.R.S. 244.020(16), that also would have constituted a potential violation of O.R.S. 244.040 and 244.120.

Even if Plaintiff had sufficiently alleged that Defendants had investigated her because of her marital status, she has not alleged any adverse employment action. Oregon courts have

PAGE 7 – OPINION AND ORDER

generally considered and adopted federal case law regarding Title VII and applied those decisions to cases arising under O.R.S. 659A.030. *See Figueroa v. Paychex, Inc.*, 2000 WL 1164266, at *4 (D. Or. Jun. 30, 2000). An employment action is adverse "if it causes a material change in the terms or conditions of employment." *King v. Slater*, Nos. CIV. 98-639-KI, CIV 98-1292-KI, 1999 WL 978020, at *3 (D. Or. Oct. 26, 1999). Materially adverse actions are varied but include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [or] significantly diminished material responsibilities." *Orozco v. Lamb Weston, Inc.*, 2020 WL 1957910, at *6 (D. Or. Apr. 23, 2020) (internal quotation marks and citation omitted). But Plaintiff has only pleaded that the questions about her ethics "made it more difficult to properly run her department," ECF 1-1 at 3,[2] and that her "ability to participate in work events at a local and national level" has diminished, ECF 5 at 5. *See* ECF 1-1 at 3 ("[The] accusations became the topic of conversation at local and national events that Plaintiff attended."). Plaintiff's perceived inability to participate in work events is insufficient to constitute adverse employment action. *See Hess v. Multnomah Cnty.*, 216 F. Supp. 2d 1140, 1154–55 (D. Or. 2001) (finding that denial of training opportunities and refusal to allow participation in community events were not adverse employment actions). Moreover, the "terms, conditions, or benefits of a person's employment do not typically, if ever, include general immunity from the application of basic employment policies or exemption from [an employer's] disciplinary procedures." *Von Gunten v. Maryland*, 243 F.3d 858, 869 (4th Cir. 2001). State

---

[2] Defendants charge that Plaintiff has pleaded for the first time in her Response that the investigation itself was an adverse employment action. ECF 7 at 3–4. This Court disagrees. Plaintiff's Response states that "the investigation and . . . challenge to her ethics impact[ed] her ability to effectively lead her department." ECF 5 at 5. Fairly read, this is the same allegation as found in Plaintiff's complaint. ECF 1-1 at 3 ("These accusations . . . made it more difficult [for Plaintiff] to properly run her department.").

PAGE 8 – OPINION AND ORDER

employees reasonably expect to be subject to governmental ethics rules and the attendant investigative and disciplinary processes. Once an anonymous tip was made accusing Plaintiff of impropriety, the Auditor's Office was *required* to investigate, produce written findings, and refer the matter to the OEC. O.R.S. 297.765(3), 5(a), 5(b). Plaintiff has cited no case law persuading this Court that a secondary effect of Defendants' mandated investigation rises to the level of adverse employment action. This Court notes, as well, that finding an adverse employment action here could hamper the ability of local governments to investigate and correct fraud, waste, and abuse by public employees.

## C. Defamation

Plaintiff's second claim for defamation must be dismissed because any statements that Defendants made were absolutely privileged. To state a claim for defamation, Plaintiff must show (1) that Defendants made a defamatory statement (2) about Plaintiff and (3) published the statement to a third party. *Neumann v. Liles*, 358 Or. 706, 711 (2016) (citing *Wallulis v. Dymowski*, 323 Or. 337, 342–43 (1996). "In defense to an action for defamation, Oregon recognizes two forms of privilege: absolute and qualified. The defense of qualified privilege can be overcome if the alleged defamatory statements were made in bad faith or with malice. Absolute privilege, on the other hand, is a complete bar to a claim of defamation and precludes liability regardless of the defendant's state of the mind." *Johnson v. Brown*, 193 Or. App. 375, 380 (2004) (citations omitted). Absolute privilege is "practically limited to legislative and judicial proceedings and other acts of state, including, it is said, communications made in the discharge of a duty under express authority of law." *Id.* at 381 (internal quotation marks omitted) (quoting *Grubb v. Johnson et al.*, 205 Or. 624, 631–32 (1955). Oregon courts have applied the privilege "to governmental settings in which 'the public's interest in the unhampered operation

PAGE 9 – OPINION AND ORDER

of the government, when exercising such functions, outweighs an individual's interest in the preservation of reputation.'" *Id*. (citing *Wallulis*, 323 Or. at 349).

In their motion to dismiss, Defendants argue that any statements made to the Portland Police Bureau and the OEC are absolutely privileged. ECF 5 at 6. This Court agrees. Subsections 5(a) and 5(b) of Oregon Revised Statute 297.765(5)(a) and (b) mandate that the investigating body "shall notify" both the OEC and the appropriate law enforcement agency of an actual *or potential* ethical violation once it is reported. Thus, Defendants' communications to these bodies were made "in the discharge of a duty under express authority of law." *Johnson*, 193 Or. App. at 380 (internal quotation marks and citation omitted)).

Defendants fail to address that Plaintiff's complaint alleges defamation in the reports made to the media. *See* ECF 1-1 at 5–6. Though it is a closer call, this Court finds that any communications made by Defendant Caballero to the media were also absolutely privileged.[3] As the elected City Auditor, Defendant Caballero is "accountable only to the public." About the Auditor's Office, City of Portland, Oregon, https://www.portland.gov/auditor/about (last visited Dec. 16, 2021). The Auditor's Office's stated mission is "to promote open and accountable government by providing independent and impartial reviews, access to public information, and services for City government and the public." *Id*. "[I]n a society in which each individual has but limited time and resources with which to observe at first hand the operations of his government, he relies necessarily upon the press." *Courthouse News Serv. v. Planet*, 750 F.3d 776, 786 (9th Cir. 2014) (quoting *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 491 (1975) (quotations omitted).

---

[3] Plaintiff' Complaint largely lacks specificity when it comes to what was reported to the media, versus what was simply available as a matter of public record. The only claim plead with sufficient particularity is that Defendant Caballero "wanted to send a message" and did so by contacting the media. ECF 1-1 at 4.

PAGE 10 – OPINION AND ORDER

To the extent that Defendant Caballero alerted the media to Plaintiff's potential ethical violations, it was key to her duties as City Auditor and obligations to the public. And the public has great interest in the City Auditor's "unhampered operation" in the name of transparent government and efficient use of taxpayer money. Especially when the City Auditor's function is in investigating claims of fraud, waste, or abuse by a certain public employee, the goal of transparent government may come into conflict with that employee's reputation. Moreover, this Court notes that both the City Auditor's FHR and the subsequent OEC proceedings are public records, O.R.S. 297.765(7), which were and still are available online.

### D. Abuse of Process

Plaintiff's third claim for abuse of process must be dismissed because Plaintiff has failed to allege actual arrest or seizure of property. To state a claim for abuse of process under Oregon law, Plaintiff must first plead "an ulterior purpose, and second, a wilful act in the use of the process not proper in the regular conduct of the proceeding," *Larsen v. Credit Bureau, Inc. of Ga.*, 279 Or. 405, 408 (1977), as well as "an actual arrest or a seizure of property," *Reynolds v. Givens*, 72 Or. App. 248, 256 (1985). *See also Voltage Pictures, LLC v. Blake*, No. 3:14-CV-1875-AC, 2015 WL 9272880, at *4 (D. Or. Dec. 17, 2015) (stating elements of an abuse of process claim under Oregon law); *Lee v. Mitchell*, 152 Or. App. 159, 179 (1998) (approving of *Reynolds*).

Plaintiff claims that Defendants, "through the production of the report reference[d] in th[e] Complaint, . . . made statements they knew, or reasonably should have known to be false." ECF 1-1 at 6. Thus, according to Plaintiff, Defendants "did not perform their fact-finding role appropriately and abused the quasi-judicial process of the OEC to attempt to further disparage

PAGE 11 – OPINION AND ORDER

Plaintiff. These actions . . . caused Plaintiff to suffer significant injury and ha[ve] diminished her reputation and ability to perform her job to the same degree as before." *Id*.

Plaintiff's Complaint does not allege any actual seizure of property (or arrest). Plaintiff was neither terminated nor demoted nor suspended. Plaintiff cites no case in which reputational harm at work or a diminished ability to perform one's job constitutes a seizure of property in the abuse of process context. Plaintiff also argues, for the first time in her Response and without citation, that she "was required to retain counsel to defend herself, causing significant loss" and that "[t]his should be considered an arrest or seizure sufficient to allow Plaintiff's claim to continue." ECF 5 at 8. Any money that Plaintiff spent retaining an attorney for the OEC proceedings was not *seized* from her because she chose to retain an attorney. *See* Seize, Black's Law Dictionary (11th ed. 2019) (defining "seize" as "[t]o forcibly take possession (of a person or property)" or "[t]o be in possession (of property)").

**E.  Due Process**

Finally, Plaintiff's due process claim must be dismissed because she has not alleged the deprivation of a protected property interest. To state a due process claim, Plaintiff must show that her "interest is within the Fourteenth Amendment's protection of liberty and property." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 571 (1972). It is the *nature*, rather than the weight of the interest at stake that matters for due process purposes. *See id*. In her Complaint, Plaintiff argues that she "now has a far more difficult time properly performing her job duties due to the actions of Defendants," ECF 1-1 at 7, and in her Response, she clarified that it was "the damage to her reputation" that caused this difficulty, ECF 5 at 9. Even assuming that Plaintiff has a property interest in her employment, that property interest is in *continued employment* rather than in continued employment with the same level of perceived difficulty or

PAGE 12 – OPINION AND ORDER

ease as before the ethics investigation. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985) ("Respondents' federal constitutional claim depends on their having had a property right in continued employment. If they did, the State could not deprive them of this property without due process." (citations omitted)). Plaintiff readily admits that she has not "suffered any loss of employment, demotion, loss of salary, or loss of benefits through her employment." ECF 5 at 9. In fact, Plaintiff's employment continued after she was accused of ethical violations. There was no deprivation of property.

Even if couched as a deprivation of liberty, Plaintiff's claim must fail. "[I]njury to reputation by itself [is] not a 'liberty' interest protected under the Fourteenth Amendment." *Siegert v. Gilley*, 500 U.S. 226, 233 (1991) (citing *Paul v. Davis*, 424 U.S. 693, 708–09 (1976)). Injury to reputation is properly adjudicated through a state-law defamation claim; but, as explained above, Plaintiff's defamation claim fails for its own reasons.

/

/

/

/

/

/

/

/

/

/

/

PAGE 13 – OPINION AND ORDER

## CONCLUSION

For the reasons explained in this Opinion, Defendants' Motion to Dismiss, ECF 3, is GRANTED. Plaintiff has failed to allege sufficient facts to establish marital status discrimination or an adverse employment action. Plaintiff also fails to state a claim for defamation because any allegedly defamatory statements were absolutely privileged. Finally, Plaintiff's state law abuse of process and federal due process claims fail because Plaintiff has not alleged a seizure of property or deprivation of property or liberty. This Court finds that any amendment would be futile and DISMISSES with prejudice Plaintiff's Complaint, ECF 1-1.

**IT IS SO ORDERED**.

DATED this 30th day of December, 2021.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge